# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

EDDIN TIRADO, o/b/o E.T,
a minor child,

     Plaintiff,

vs.

                            CASE NO: 8:11-cv-1048-T-SPC

MICHAEL J. ASTRUE
Commissioner of Social Security,

     Defendant.

_____

## ORDER

     This matter comes before the Court on the Plaintiff's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the claimant's Claim for Disability Insurance Benefits and Supplemental Security Income payments (Doc. # 1) filed on May 12, 2011, in the Middle District of Florida, Tampa Division. A Consent form (Doc. # 11) was signed by the parties indicating their agreement for jurisdiction in this matter to be exercised by the United States Magistrate Judge. The parties' consent was approved by the District Court on August 15, 2011. See Order Doc. # 14. The Plaintiff filed a Memorandum of Law in Opposition to the Commissioner's Decision (Doc. # 24) on January 10, 2012. The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. # 26) on March 9, 2012. Thus, the matter is now ripe for review.

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff, on behalf of the claimant, a child under the age of 18, filed an application for a period of Disability and Childhood Supplemental Security Income on October 18, 2007. (Tr. 16). The Plaintiff's claim was denied initially on April 17, 2008, and upon reconsideration on July 16, 2008.  (Tr. 16).  The Plaintiff timely filed a written request for hearing on August 6, 2008. (Tr. 16).  On February 4, 2010, a hearing was held before the Honorable Dores D. Mc Donnell Sr., Administrative Law Judge ("ALJ").  (Tr. 30).  The ALJ issued an unfavorable decision on March 5, 2010.  (Tr. 16).  The Plaintiff timely filed a Request for Review. (Doc. # 1). The Appeals Council denied the Plaintiff's Request for Review on March 9, 2011.  (Doc. # 24, p. 2).  Therefore, the decision of the Commissioner became final.  Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The claimant was born on November 19, 1993. (Tr. 19). Therefore, at the time of the ALJ's decision, Plaintiff was 16 years old and in 9th grade. (Tr. 30, 38, 106). Claimant alleges an onset disability date of October 17, 2007 due to his attention deficit hyperactivity disorder and oppositional defiant disorder. (Tr. 106).

### *Medical and Psychological History*

The claimant has a history of attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD), for which he has been prescribed Concerta and Risperdal

with increasing dosages over the past few years with fair results. (Tr. 19). The claimant has also been diagnosed with asthma and a sleep disorder. (Tr. 19).

*Bruce M. Schnapf, D.O.−Pediatric Pulmonary Specialist*

During a medical examination in April 2005, with Bruce M. Schnapf, D.O., the claimant denied significant or persistent problems with upper airway congestion. (Tr. 19). The father reported that the claimant does occasionally have some mild snoring, but it is not loud or persistent. (Tr. 19). The claimant was not having significant problems with restless sleep or daytime hypersomnolence and he has not had any hospitalizations or emergency room visits regarding his asthma. (Tr. 19). Dr. Schnapf noted a chest exam did not reveal crackles or wheezes. (Tr. 19). His pre and post lung function assessment overall appeared normal. (Exhibit 2F). Additional treatment records from Hillsborough County Health Department report no coughing or wheezing and his asthma and allergies are well under control with the use of Advair and Singular. (Exhibit 7F).

*Jose Ferreira, M.D.−Pediatric Epilepsy & Neurology Specialist*

In 2003, Dr. Ferreira diagnosed claimant with attention deficit hyperactivity disorder following claimant's mother reporting that claimant was having difficulties in school and at home. (Tr. 21). Dr. Ferreira started the claimant on Ritalin LA. (Tr. 21). In 2005, follow-up treatment records showed that the claimant's grades had improved significantly since he started medication and he had been focusing better and paying attention. (Tr. 21). In November 2005, claimant's medication was changed from Ritalin to Adderall XR. (Tr. 21). In early 2006, after reported complaints from teachers at school that he was not completing his class assignments, frequently losing his school supplies and homework, as well as his mother reporting that he was often staring into space and always needed redirection to complete a task at home, his dosage of

3

Adderall was increased. (Tr. 21).  By May 2006, the claimant reported no complaints from his teacher, his grades had improved, and he was focusing on his work without difficulties. (Tr. 21). By late 2006, it was reported that claimant was again having trouble in school as well as at home. (Tr. 21). Dr. Ferreira again switched his medications, discontinuing his use of Adderall and prescribing Concerta. (Tr. 21). In January 2007, the claimant's mother reported a great difference in claimant's attention and that he was not having any problems at school or home. (Tr. 21). His mother also reported that he was less aggressive. (Tr. 21). In May 2007, claimant's mother reported claimant being very aggressive at school and at home. (Tr. 21). The mother further reported that the claimant has a lot of anger problems and has outbursts for no apparent reason. (Tr. 21). Dr. Ferreira diagnosed behavioral problems and aggressiveness and started claimant on Risperdal. (Exhibit 8F).

In October 2007, the claimant's mother reported to Dr. Ferreira that the claimant has done better since starting the Risperdal. (Tr. 22). His mother reported improvements in school. (Tr. 22). In January 2008, the mother reported claimant's grades had dropped and he had been irritable. (Tr. 22). However, Dr. Ferreira noted that claimant's mother was only giving the claimant the Risperdal in the morning. (Tr. 22). In May 2008, the claimant was discharged from Dr. Ferreira's practice, as he had had three no shows and at his last confirmed appointment the claimant did not show, but his father showed up requesting a prescription. (Tr. 22).

On December 20, 2008, Dr. Ferreira, signed a Childhood Disability Evaluation Form, that was originally filled out by Marie Akers with Pediatric Epilepsy and Neurology on June 20, 2007. The Evaluation form noted that the claimant was being treated for attention deficit hyperactivity disorder, aggressiveness, behavioral problems and sleep disorder. (Tr. 21). It further noted claimant has difficulties staying on task and following through with directions, he

needs constant reminders to complete chores and assignments, he does not follow through with assignments and tasks, he is disorganized and needs constant redirection, he is aggressive and has outbursts, and claimant has no limitations in moving about and manipulating objects and caring for himself. (Tr. 21–22, Exhibit 4F). The evaluation form noted that claimant has marked limitations in interacting and relating with others and in acquiring and using information, and he has extreme limitations in attending and completing tasks. (Tr. 21–22).

*Martha C. Routes–Licensed Mental Health Clinician (LMHC)*

In August 2007, the claimant was seen at Mental Health Care, Inc. for medication evaluation and management. (Tr. 22). Martha C. Routes noted in a psychological evaluation that the medications prescribed by treating physician Dr. Ferreira need adjusted because they only seem to be partially effective. (Tr. 22). It was reported the claimant was easily angered, disruptive, and has trouble concentrating. (Tr. 22). Ms. Routes provisional diagnosis was attention deficit hyperactivity disorder hyperactive-impulsive type, with an assessed global assessment of functioning of 50. (Tr. 22).

*Kay McAuliffee–Licensed Clinician Social Worker (LCSW)*

Claimant was referred for individual and family therapy with Kay McAuliffee, licensed clinician social worker (LCSW). (Tr. 22). After several therapy sessions in July 2008, Ms. McAuliffee closed the claimant's case as he is maintaining good behavior and mood and doing very well making good progress on his treatment plan. (Tr. 22). Ms. McAuliffee noted that the claimant's global assessment of functioning was 85. (Tr. 22). In November 2008, the claimant was reentered into a treatment plan for individual and family therapy and psychiatric services, due to inattention, hyperactive/impulsive behavior. (Exhibits 10F and 14F).

*Jimmy Vargas, M.D.*

In March 2008, psychiatrist Jimmy Vargas, M.D., noted that the claimant appears to be of average intelligence, he relates well and although his speech is kind of soft and slow, he is cooperative. (Tr. 22). His sensorium is clear, no evidence of perceptual problems, and clinical symptoms of depression. (Tr. 22). He does not exhibit tremors, dyskinesis, or involuntary movements. (Exhibit 10F).

*Cecilia Yocum, Ph.D.–State Psychological Consultative Evaluator*

On April 1, 2008, in a psychological consultative evaluation at the request of the State agency, Cecilia Yocum, Ph.D. noted that the claimant reportedly is doing fairly well academically and is not in learning disability classes. (Tr. 22). Dr. Yocum noted claimant was oriented in all three spheres and cooperative. (Tr. 22). His mood was euthymic; affect was appropriate; psychomotor behavior was within normal limits. (Tr. 22). Claimant reported no problems with sleep or appetite and his energy level is good. (Tr. 22). There are no significant problems with anxiety, however he has problems with impulse and anger control. (Tr. 22). During the examination, the claimant was administered the Weschsler Intelligence Scale for Children-Fourth Edition (WISC-IV). (Tr. 22). The claimant scored a full scale IQ of 75, with a verbal comprehension index of 71, a perceptual reasoning index of 86, a working memory index of 86, and a processing speed index of 80. (Tr. 22). Dr. Yocum noted that these results indicate borderline intellectual functioning and appears to be a fairly good representation of the claimant's abilities. (Tr. 22). Dr. Yocum's diagnostic impression was attention deficit hyperactivity disorder, combined type rule out express language disorder; oppositional defiant disorder v. mood disorder, not otherwise specified. (Tr. 22–23). Dr. Yocum also noted that

claimant had some problems with mood and aggressiveness that have improved with medications. (Exhibit 5F).

*Sergio J. Jacinto, M.D.*

In August 2008, claimant saw Sergio J. Jacinto for a neurologic evaluation regarding his behavior. (Tr. 23). Dr. Jacinto noted that the claimant's father reported the claimant only took the Concerta on school days and tolerated nicely without side effects. (Tr. 23). He is easily distracted and at times aggressive and defiant as well as disrespectful, especially if he does not get his medications. (Tr. 23). Claimant's father reported that claimant had been off his medication all summer and had done relatively well at home. (Tr. 23). Upon examination, Dr. Jacinto noted the claimant had no evidence of hyperactivity, impulsivity, or lack of attention span. (Tr. 23). Dr. Jacinto's neurologic impression was a 14-year old with signs and symptoms suggestive of attention deficit hyperactivity disorder of the combine type in addition to oppositional defiant disorder. (Tr. 23). An electroencephalographic report in August 2008 showed a normal study. (Tr. 23). In March 2009, Dr. Jacinto noted that the claimant did not have any sleep disorders. (Exhibit 12F and 13F). Dr. Jacinto also noted at a follow-up visit that the mother reported that the increase in the Concerta has helped improve the claimant's behavior and concentration ability, and overall she feels that claimant is doing better. (Tr. 23).

*Neil Thierry, M.D.*

In a psychiatric evaluation in February 2009 at Northside Mental Health Center, Neil Theirry, M.D., noted upon examination that claimant was alert and oriented times four, his speech was at a normal rate, volume and tone, he was cooperative, his mood was "happy but serious," affect was full range, and his insight and judgment were fair. (Exhibit 10F). Dr. Thierry

increased the dosage of Concerta to treat symptoms of ADHD, combined type, and recommended continued counseling to help with his ODD. (Exhibit 10F).

In treatment records from Dr. Thierry dated March 2009, it was noted that the claimant was having some problems with insomnia, but overall he was doing well. (Tr. 19). In April 2009, the claimant reported improved behavior at school and home, including earning better grades and expecting to pass all his classes for the semester. (Tr. 23). In June 2009, Dr. Thierry noted with medication claimant had good results with good duration of action. (Tr. 23). Dr. Thierry noted claimant was doing well on current medication and to continue, however, he may reduce or not use medication over the summer depending on his level of impairment. (Exhibit 10F). In August 2009, claimant reported not using much medication over the summer and functioning fairly well. (Tr. 23). Dr. Thierry recommended continuing using Concerta 75mg and discussed the possibility of a lower dose of medication over the school year, if it appears he is functioning and does not have severe impairment without use of the medicine. (Exhibit 11F).

*Jessee Taylor–Registered Social Worker*

In therapy records, Jessee Taylor, registered social worker completed a Children's Function Assessment Rating in February 2009, wherein he noted that the claimant does not demonstrate an inability to perform independently in day-to-day living, i.e., personal hygiene, dressing appropriately, obtaining regular nutrition, and housekeeping. (Exhibit 10F). However, the social worker noted that the claimant has less than slight problems in hyperactivity and activities of daily living; slight problems in anxiety, thought process and behavior "home" setting; moderate problems in cognitive performance and moderate to severe problems in work/school, with no problems in interpersonal relationships. (Exhibit 10F).

*Lee Reback Psy.D., P.A.–State Agency Medical Expert*

Lee Reback P.A. determined that claimant's impairments are severe, but not severe enough to meet, medically equal or functionally equal the criteria of a listed impairment. (Exhibit 6F).

## *Administrative Law Judge's Decision*

Upon consideration of the record, the Administrative Law Judge (ALJ) found the claimant was a minor and therefore had not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.971 et seq.). (Tr. 19).  The ALJ found that the claimant had the following severe impairments: attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) (20 CFR 416.924(c)). (Tr. 19).  However, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926). (Tr. 20). The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a). (Tr. 20). After careful consideration of the entire record, the ALJ concluded that the claimant has not been disabled, as defined in the Social Security Act, since October 18, 2007, the date the application was filed (20 CFR 416.924(a)). (Tr. 29).

## **THE STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant under the age of 18 is disabled, the ALJ

must follow the sequential inquiry described in the regulations.[1]   20 CFR §§ 404.920(a), 416.924(a).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute its judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357

---

[1] The inquiry requires the ALJ to engage in a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled (20 CFR § 416.924(a)).
   *Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
   *Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
   *Step 3.*  Does the claimant have an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listings? If the claimant has an impairment or combination of impairments that meets, or medically equals or functionally equals the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled (20 CFR § 416.924(d)).

F. 3d 1206, 1210 (11th Cir. 2005).  If the Commissioner's decision is supported by substantial

evidence, it should not be disturbed. <u>Lewis v. Callahan</u>, 125 F. 3d 1436, 1440 (11th Cir. 1997).

<u>**DISCUSSION**</u>

Under the authority of the Social Security Act, the Social Security Administration has

established a three-step sequential evaluation process to determine whether an individual under

the age of 18 is disabled. (20 CFR § 416.924(a)).  At step one, the ALJ must determine whether

the claimant is engaging in substantial gainful activity. If the claimant engages in substantial

gainful activity, he is not disabled, regardless of his medical condition(s), age, education, or

work experience (20 CFR § 416.924(b)). If the individual is not engaging in substantial gainful

activity, the analysis proceeds to the second step. At step two, the ALJ must determine whether

the claimant has a medically determinable impairment that is "severe" or a combination of

impairments that is "severe" (20 CFR § 416.924(a)). If claimant does not have a medically

determinable severe impairment of combination of impairments, he is not disabled. If the

claimant has a severe impairment(s), the analysis proceeds to the third step (20 CFR 416.924(a)).

At step three, the ALJ must determine whether the claimant has an impairment or

combination of impairments that meets or medically equals the criteria of a listing, or that

functionally equals the listings. In determining whether an impairment or combination of

impairments functionally equals the listings, the undersigned must assess the claimant's

functioning in terms of six domains: (1) acquiring and using information; (2) attending and

completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for yourself; and (6) health and physical well-being. In making this

assessment, the ALJ must compare how appropriately, effectively and independently the

claimant performs activities compared to the performance of other children of the same age who

do not have impairments.  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain (20 CFR § 416.926a(d)).

Social Security regulation 20 CFR § 416.926a(e)(2) explains that a child has a "marked limitation" in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. The regulations explain that a "marked" limitation means a limitation that is "more than moderate" but "less than extreme."

Social Security regulation 20 CFR § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limit only one activity or when the interactive and cumulative effects of his impairment(s) limit several activities. The regulations explain that an "extreme" limitation means a limitation that is "more than marked."

The Plaintiff sets forth one main issue. Plaintiff asserts that the ALJ failed to apply the correct legal standards to the opinion evidence of Dr. Ferreira, and if the ALJ did discount the weight given to Dr. Ferreira's opinion, the ALJ failed to articulate what weight was accorded to the opinion and the reason for discounting the weight. In response, the Commissioner argues the ALJ's decision is supported by substantial evidence in the record and it therefore should be affirmed.

*Whether the ALJ Failed to Give the Appropriate Weight to the Opinion of Dr. Ferreira*

The Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Ferreria, claimant's treating physician, and gave an undue amount of weight to the state agency physician who never examined nor treated the claimant.   The Commissioner replies that the ALJ's rejection of Dr. Ferreria's opinion is supported by substantial evidence, and that his treatment of the opinions of Dr. Ferreria is not reversible error.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  20 C.F.R. § 404.1527(d); Lewis, 125 F.3d at 1439–41; Sabo v. Chater, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and

extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  20 C.F.R. § 404.1527(d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at 1334. Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985). The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

The Plaintiff argues that the ALJ's failure to specifically state what weight was given to the opinion of Dr. Ferreira, or why more weight was given to the state examining physician, is reversible error. (Doc. # 24, p. 15, Tr. 21–22, 253–57).  It is clear that the ALJ accepted and gave great weight to some of Dr. Ferreira's opinions, such as that the claimant does not have limitations in the domains moving about and manipulating objects, caring for yourself, and health and physical well-being, and to the diagnosis of attention deficit hyperactivity disorder and oppositional defiant disorder (Tr. 21–22, 25–26).

In December 2008, Dr. Ferriera signed Marie Akers' June 20, 2007 assessment indicating Plaintiff has marked limitations in the domains of acquiring and using information and interacting and relating with others, and extreme limitations in attending and completing tasks. (Tr. 21–22, 253–57). Dr. Ferriera signed the Childhood Disability Evaluation Form eighteen

months after Ms. Akers originally filled out the form, and almost a year after he had stopped treating the claimant. (Doc. # 26, p.14; Tr. 253–57).

The ALJ and Dr. Ferreira reached the same conclusions for the domains moving about and manipulating objects, caring for yourself, and health and physical well-being. (Tr. 24–29, 253–57). The ALJ clearly disagreed with Dr. Ferreira's finding that the Plaintiff has a marked limitation in interacting and relating with others and in acquiring and using information, and an extreme limitation in attending and completing tasks, because she found to the contrary in her final decision.

### (a) *Domain: Interaction and Relating with Others*

In concluding that the claimant has less than marked limitation within the domain interacting and relating with others, the ALJ stated:

> State agency consultants also found the claimant to have less than marked limitations in interacting and relating with others, which the undersigned concurs with. In the Function Report-Child dated October 2007, the claimant's mother reported that the claimant has friends his own age, he is able to make new friends and he generally gets along with all family members and school teachers. No problems were reported by the parents (Exhibit 2E). In a teacher questionnaire dated December 2007, his teacher noted on a weekly basis time out or removal from the classroom is used. Edgar says inappropriate verbal comments toward students. If he is separated from the students he can complete some of this class work. The teacher further reported serious problems in the claimant's ability to play cooperatively with others, make and keep friends, seek attention appropriately and to respect adults in authority. Very serious problems were reported in the claimant's ability to express anger appropriately and to use language appropriate to situation listener.

(Tr. 27).

Contrary to the ALJ's determination, Dr. Ferreira found that claimant has a marked limitation within this domain. The form filled out by Marie Akers, that Dr. Ferreira endorsed, stated that in regard to interacting and relating with others claimant "is aggressive and has outburst[s] when he does not get his way." (Tr. 255). Thus, Dr. Ferreira the treating physician

opined that the Plaintiff had a marked limitation when it comes to interaction and relating with others, yet the ALJ failed to discount Dr. Ferreira's opinion in relation to that domain.

*(b) Domain: acquiring and using information*

The ALJ concluded that the claimant has less than marked limitation in acquiring and using information, the ALJ stated:

> State agency consultants also found the claimant to have less than marked limitations in interacting and relating with others, which the undersigned concurs with. Psychological consultative evaluation noted claimant reportedly was not doing any reading at home but his parents reported he was doing his homework better. Testing (Wechsler Intelligence Scale for Children-Fourth Edition) in April 2008 indicated a full scale IQ of 75, with a verbal comprehension index of 71, a perceptual reasoning index of 86, a working memory index of 86 and a processing speed index of 80, all of which indicate borderline intellectual functioning (Exhibit 5F). The mother reported in a function report that the claimant has limitations in reading and understanding sentences in comics and cartoons, stories in books, magazines, or newspapers and spelling words of more than 4 letters (Exhibit 2E). In a teacher questionnaire dated December 2007, his teacher noted, Edgar works better by himself.  He has poor social skills. He is easily distracted by others and he will distract others (Exhibit 11E). Despite his behavior he continues to do good academically. In June 2009, Dr. Thierry noted with medication claimant has good results with good duration of action. Claimant reported he is doing well with class work and that he got two A's, two B's and a C on his report card (Exhibit 11F).

(Tr. 25).

On the Childhood Disability Evaluation Form that Dr. Ferreira signed, the form stated that the claimant has a marked limitation within the domain of acquiring and using information. (Tr. 255).  Specifically, that claimant has a short attention span and is very forgetful. (Tr. 255). He needs constant reminders to complete chores and assignments. (Tr. 255). Also, that he is currently enrolled in 504 plan at school. (Tr. 255).

While the ALJ supported her decision with the opinions of the State Agency Consultants, she failed to state what weight she gave to Dr. Ferreira's opinion or to

discount where she disagreed with Dr. Ferreira's opinion that the Plaintiff had marked limitations in acquiring and using information.

(c)*Domain: Attending and Completing Tasks*

The ALJ concluded that the claimant has marked limitations in attending and completing tasks. (Tr. 26). To support this finding, the ALJ stated:

> State agency consultants also found the claimant to have marked limitations in interacting and relating with others, which the undersigned concurs with.[2] Teacher reported Edgar had serious problems in his ability to take turns, work without distracting self or others and carry out multi-step instructions. He has very serious problems in his ability to organize school materials and to work at a reasonable pace (Exhibit 11E). In the home claimant is reported to have difficulty completing homework and chores most of the time (Exhibit 2E). The claimant's social worker in February 2009 noted that the claimant has moderate problems in cognitive performance and moderate to severe problems in work/school (Exhibit 10F).

(Tr. 26).

The Childhood Disability Evaluation Form signed by Dr. Ferreira, stated that the claimant has an extreme limitation in the domain of attending and completing tasks. (Tr. 255). In regard to this domain, it was stated that the claimant does not follow through with assignments and tasks, he is disorganized and needs constant redirection. (Tr. 255).

The ALJ failed to state what weight, if any, was given to the most important part of Dr. Ferreira's opinion, the Childhood Disability Evaluation Form, and the domains in which the ALJ's opinion differed from Dr. Ferreira's opinion. This is a very important aspect of the ALJ's decision, because giving more weight to Dr. Ferreira's opinion within any of the three domains could result in a finding that the claimant is disabled. While supporting her conclusions as to the

---

[2]     In her decision, the ALJ mentions the wrong domain here, however, based upon the context of the decision, the ALJ discusses that the Plaintiff had marked limitations in the domain related to limitations in attending and completing tasks which is the domain at issue in that section of her decision.  The ALJ does go on to discuss the Plaintiff's ability to interact and relate with others in her decision. Thus, the Court considers the discrepancy to be nothing more than a clerical error.

analysis of the six domains, the ALJ failed to state the weight given to Dr. Ferreira's opinion, if any, and why she has given Dr. Ferreira's opinion less weight as is required by the Regulations.

Under the Regulations, substantial weight must be given to the opinion of a treating physician unless there is good cause to do otherwise.  20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996).  If a treating physician's opinion is well-supported, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating physician's opinion if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991).  If the ALJ discounts the treating physician's opinion, he *must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error.*  Morrison, 278 F. Supp. at 1334 (emphasis added).

Although the Commissioner alleges that there are reasons for discounting the opinion of Dr. Ferreira, such as the timing of endorsing the form and factual inaccuracies indicating that Dr. Ferreira's approval was not an informed review of all of the evidence of the record at the time, this is not sufficient under the Regulations. The ALJ is required to clearly state what weight is given to a treating physician's opinion, if any, and reasons for discounting such weight. Morrison, 278 F. Supp. at 1334.

Here, the ALJ discussed Dr. Ferreira's treatment of the claimant thoroughly within her opinion. However, when she analyzed each domain, and supported her conclusions, she never mentioned Dr. Ferreira's treatments or opinions of the claimant. The ALJ agreed with Dr. Ferreira on three of the domains, but came to a contrary finding on the other three. Thus, it is obvious that she discounted the opinion of Dr. Ferreira, yet she failed to state what weight, if

any, was given to Dr. Ferreira's opinion, and her reasons for not giving the opinion controlling weight. Additionally, she clearly stated that she gave significant weight to the opinion of the State agency medical expert, yet failed to ever mention what weight was given to Dr. Ferreira's opinion. (Tr. 24). Even though the discount of weight can be implied from the ALJ's analysis, this is not sufficient. Rea v. Commissioner of Social Sec., 2009 WL 764164 *12 (M.D. Fla. 2009). The ALJ must state what weight is given to a treating physician's opinion, and reasons for discounting, and failure to do so is reversible error.

Conclusion

Accordingly, the Court is unable to determine whether substantial evidence supports the ALJ's decision because of the failure to state the specific weight accorded to Dr. Ferreira's opinion, and reasons for discounting the weight given to Dr. Ferreira's opinion is reversible error. Hudson, 755 F.2d at 786. Thus, the case must be remanded pursuant to § 405(g) for the ALJ to make specific findings regarding the weight accorded to the opinion of Dr. Ferreira, specifically the Childhood Disability Evaluation Form, and state reasons for discounting the weight under the domains where the ALJ's decision differs from that of Dr. Ferreria's opinion.

Accordingly it is now

**ORDERED:**

The decision of the Commissioner is be **REMANDED** pursuant to 42 U.S.C. § 405(g) for a determination of the weight given to Dr. Jose Ferreira's opinion, and an explanation of any reasons for discounting the weight given to the treating physician for the following domains:

(1) Interacting and Relating with Others;

(2) Acquiring and Using Information;

(3) Attending and Completing Tasks.

The Clerk of the Court is hereby directed to issue a judgment consistent with this ruling and thereafter close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this 11th day of April, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of record